UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

GLEDYS STUBBLEFIELD )
)
v. ) NO. 2:06-CV-129
)
HAWKINS COUNTY, TENNESSEE, )
*ET AL.* )

# MEMORANDUM OPINION

On June 24, 2005, the plaintiff was arrested by Michael Price, a Deputy Sheriff of Hawkins County, Tennessee. Deputy David Lafollette assisted in arresting plaintiff. Plaintiff claims that the deputies had no probable cause to arrest him, and that they used excessive force in making that arrest. He has sued Hawkins County, Hawkins County Sheriff Warren Rimer, and deputies Price and Lafollette under 42 U.S.C. § 1983 for false arrest and excessive force. He also alleges that Hawkins County and its Sheriff failed to adequately train and supervise the deputies, as a result of which the plaintiff was denied his constitutional rights under the Fifth, Eighth, and/or [sic] Fourteenth Amendment to the Constitution.

It is difficult to ascertain from plaintiff's complaint whether he is asserting a separate state law claim for assault and battery, or if the language regarding assault and battery is simply an allegation made in support of his constitutional claim for excessive force. The court will assume, as has the defendants, that plaintiff has alleged a state law claim for assault and battery.

Plaintiff also makes a claim of negligence, although it is unclear whether that allegation is directed to false arrest, or the force used to effectuate that arrest, or both.

Lastly, in their motion for summary judgment, the defendants refer to a cause of action

based on "outrageous conduct." The court had read, and re-read several times, plaintiff's complaint, and nowhere therein can the court ferret out any language, artful or inartful, that suggests that the plaintiff has asserted outrageous conduct as a cause of action. Oddly, as best as can be ascertained, it seems that defendants' counsel suggested to plaintiff during the course of his discovery deposition that he was claiming that deputy Price acted outrageously.[1] Inasmuch as defendants' counsel assumes that plaintiff has raised a claim of outrageous conduct, the court will do likewise.

Thus, it appears that the plaintiff is suing (1) Hawkins County, Sheriff Rimer, deputy Price and deputy Lafollette for false arrest and excessive force used in the course of that arrest; (2) Hawkins County and Sheriff Rimer for inadequate training and supervision of the deputies of the Sheriff's Department; (3) deputy Price and deputy Lafollette for assault and battery; and (4) Hawkins County and Sheriff Rimer for negligence. Based on paragraph 17 of the complaint, plaintiff argues that Hawkins County and Sheriff Rimer should be vicariously liable under 42 U.S.C. § 1983 for the assault and battery and the false arrest committed by the two deputies.

The defendants have moved for summary judgment, (Doc. 22), relying upon the pretrial discovery depositions of the plaintiff and deputy Price, and plaintiff's answers to defendants' first set of interrogatories.

Summary judgment is appropriate only if there are no genuine issues regarding any material facts and, based upon those undisputed facts, the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c). The moving party has the initial burden of proving that there are no genuine issues of material facts and that the moving party is entitled to judgment as a matter of

---

[1]Plaintiff's Depo., ¶ 80.

law. *Celotex Corp. v. Catrett,* 47 U.S. 317 (1986)*; Street v. J.C.Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). If the moving party meets that burden, the non-material moving party then has the burden of producing evidence that demonstrates the existence of a fact, or a dispute concerning a material fact, that precludes summary judgment. The court must draw all possible favorable inferences in favor of, and construe the evidence in the light most favorable to, the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986). However, the evidence in favor of the non-moving party must be enough to support a jury verdict in that party's favor. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson, supra*, at 2511.

There are disputed issues of fact as discussed hereafter. The version most favorable to the plaintiff must be assumed to be true for purposes of ruling on defendant's motion. Similarly, where more than one inference can be drawn from a fact, the court must adopt the one more favorable to the plaintiff.

The parties' respective versions of the plaintiff's arrest and the events leading up to it are similar in a few particulars, but for the most part are markedly different. It is undisputed that (1) a citizen called the Hawkins County Sheriff's Office to report that an unnamed intoxicated man was in the middle of Pinhook Road, stopping cars in an attempt to sell crack cocaine. That intoxicated man was plaintiff's son; plaintiff's cousin, Darryl Heder, told the plaintiff that his son was drunk and in the road stopping cars. Plaintiff thereupon walked from his house to the road to check on his son. He confronted his son, ordering him to return to plaintiff's house. He also told his son that he intended to call the police. Plaintiff's son walked to his father's house, after which plaintiff

3

began walking towards his house.

Deputies Michael Price and David Lafollette of the Hawkins County Sheriff's Department were the officers who responded to the report of an intoxicated man in the roadway. Each officer was in his own marked car. As plaintiff was walking along the edge of the road (but not in the road) towards his house, deputy Price pulled up behind plaintiff. Aware of the headlights behind him, plaintiff turned his head and recognized that the car was a Sheriff's Department cruiser. Nevertheless, he continued walking towards his house.

It is at this juncture that plaintiff's version of events, and deputy Price's version of events, diverge considerably.

### *PLAINTIFF'S VERSION*

The officer shined his light on plaintiff and told him to stop and turn around, and plaintiff did so. The deputy told plaintiff to walk back to the police car, and again plaintiff complied. When plaintiff arrived at the police car, deputy Price instructed him to place his hands on the police car. Again plaintiff obeyed. At that point, the deputy instructed the plaintiff to place his hands behind him so that he could be handcuffed, to which plaintiff responded, "Wait a minute buddy, I haven't done anything." Plaintiff testified that he was attempting to tell the deputy "what he was fixing to do," but the deputy wouldn't listen. Plaintiff kept asking the deputy why he was being arrested, but the deputy declined to tell him. Plaintiff testified that he did not want to be arrested, and that he did not intend to go to jail because he "hadn't done anything." He went on to testify that he refused to put his hands behind his back, and that he told the deputy that he was going to go home. On page 32 of his deposition, the following testimony appears:

> I said, "Sir, I live right there." I pointed to my trailer. I said, "I have

4

> been sick all day. "I've had the flu or something. I'd been running a fever. I said, "I don't feel good." I said, "Leave me alone." And I tried to tell him, and I don't know whether he would listen to me or what his problem was. I tried to tell him my son was the one he wanted and that he was right over there at the house, just right there on hundred and fifty, two hundred feet. I pointed right there. I said, "He is the one you want he's dead dog drunk." I said, "I am sick. I don't feel good, I am going home."
>
> I turned to go to the house. I don't know how many steps I took. He jerks me around. And when he spins me around then the mace comes in my eyes. Then I got tears.

Plaintiff ultimately acknowledged in his deposition that he did resist arrest, and that he vigorously resisted the officers' efforts to handcuff him. It finally took several other officers to accomplish the task. The officers pushed him to the ground, as a result of which plaintiff sustained some injuries.

### *DEPUTY PRICE'S VERSION*

The only description deputy Price had of the subject of the citizen complaint was that he was male and intoxicated. Deputy Price received the call at 12:34 a.m. and it took him approximately four minutes to get to the appropriate area of Pinhook Road. Deputy Lafollette also responded to the call.

Deputy Lafollette took the responsibility for investigating an automobile on or near the road. Deputy Price observed a pedestrian, now known to be the plaintiff, and indicated to Lafollette that he would "make contact" with that individual.

Price testified that as he came up behind plaintiff, plaintiff glanced at him for a second but kept walking. Price activated his blue lights, stopped his car, and got out. Price hailed plaintiff, saying "Hey, how are you doing?," to which the plaintiff responded, "I've not done nothing, I'm going home." Price then identified himself as a deputy sheriff, and told plaintiff to stop because

5

he needed to talk to him for a moment. According to Price, plaintiff raised his voice somewhat and, in an "excited tone," said, "I've not done nothing. I'm going home," and he continued to walk away from Price.

When asked if he had observed plaintiff doing anything illegal or suspicious, Price testified that plaintiff was "in the area of the call" and matched the general description of the report. That report, of course, was merely that an intoxicated male was walking in the roadway. Price continued walking behind plaintiff. He testified that he asked plaintiff to stop "15 to 20 times." At some point plaintiff pointed to his home and said, "I live up here;" however, as far as Price could tell plaintiff was merely pointing up the road. Price testified that he could never get close enough to plaintiff, or calm him down enough, to tell him why he needed to talk to him. During the 15 times or so he told plaintiff to stop and talk, plaintiff had walked 20 to 25 feet, "maybe more, maybe less."

Plaintiff ultimately stood there with his fists clenched, yelling and screaming that he had done nothing, and that he was going to go home.

After plaintiff refused Price's numerous requests or demands that he stop and talk, Price told plaintiff that he was under arrest. Price attempted to take plaintiff by the arm, but plaintiff jerked his arm away. Price again tried to take him by the arm and once again he jerked free. As he did so, he kept moving away. It was clear to Price that plaintiff did not want to be arrested, and that he was "resisting more than assaulting."

Because of plaintiff's refusal to stop and talk with Price, Price never had the opportunity to find out if plaintiff was the individual about whom the complaint had been made.

Finally, Price told plaintiff that if he did not cooperate he intended to spray him with pepper spray. As plaintiff continued yelling that he had done nothing wrong, Price sprayed plaintiff in the face with pepper spray.

After being hit in the face with the pepper spray, plaintiff stepped back, shook his head, and continued to refuse to cooperate. He repeated his mantra of, "I've done nothing, I'm going home," and began walking away. Price endeavored to keep up with him until he could get someone there to assist him. At this point deputy Lafollette got out of his car. Price told Lafollette that he could do nothing with plaintiff and that he needed help in handcuffing him. A deputy got on either side of plaintiff as he continued to scream and yell that he had not done anything wrong and that he was going home. The officers were finally able to get one handcuff on plaintiff, and more or less maintained that status until city police officers arrived to lend further assistance. Plaintiff was transported to the jail where he was processed and ultimately released.

Defendants present the following issues in their motion for summary judgment:

I. WHETHER UNDER 42 U.S.C. § 1983 PLAINTIFF'S SUIT AGAINST DEPUTY PRICE AND DEPUTY LAFOLLETTE IN THEIR OFFICIAL CAPACITIES IS IMPROPER AND REDUNDANT

II. WHETHER PLAINTIFF'S CLAIMS FOR FALSE ARREST FAIL AS A MATTER OF LAW SINCE THE ARREST WAS SUPPORTED BY PROBABLE CAUSE

III. WHETHER PLAINTIFF'S CLAIMS FOR OUTRAGEOUS CONDUCT FAIL AS A MATTER OF LAW BECAUSE THE DEFENDANTS' ACTIONS DID NOT RISE TO THE REQUISITE LEVEL OF OUTRAGEOUSNESS AND PLAINTIFF DID NOT SUSTAIN A SERIOUS MENTAL INJURY

IV. WHETHER SHERIFF WARREN D. RIMER, DEPUTY MICHAEL PRICE, AND DEPUTY DAVID LAFOLLETTE ARE QUALIFIEDLY [sic] IMMUNE FROM SUIT SINCE THEIR ACTIONS WERE OBJECTIVELY REASONABLE AND DID NOT VIOLATE PLAINTIFF'S CLEARLY

ESTABLISHED CONSTITUTIONAL RIGHTS

V. WHETHER PLAINTIFF'S CLAIMS AGAINST HAWKINS COUNTY UNDER 42 U.S.C. § 1983 FAIL AS A MATTER OF LAW SINCE RESPONDEAT SUPERIOR IS NOT A PROPER BASIS FOR LIABILITY UNDER § 1983

VI. WHETHER UNDER TENN. CODE ANN. § 8-8-301, SHERIFF WARREN RIMER IS IMMUNE FROM LIABILITY FOR THE ACTS OR OMISSIONS OF HIS DEPUTIES

VII. WHETHER PLAINTIFF'S CLAIMS FOR IMPROPER OR INSUFFICIENT TRAINING IN THE HAWKINS COUNTY SHERIFF'S DEPARTMENT FAIL AS A MATTER OF LAW

VIII. WHETHER PLAINTIFF'S STATE LAW CLAIMS OF ASSAULT AND BATTERY FAIL AS A MATTER OF LAW BECAUSE DEFENDANTS' ACTIONS WERE OBJECTIVELY REASONABLE AND ANY ASSAULT AND BATTERY WAS A RESULT OF THE OFFICERS' ATTEMPTS TO SUBDUE PLAINTIFF IN ORDER TO EFFECT AN ARREST

*I. WHETHER UNDER 42 U.S.C. § 1983 PLAINTIFF'S SUIT AGAINST DEPUTY PRICE AND DEPUTY LAFOLLETTE IN THEIR OFFICIAL CAPACITIES IS IMPROPER AND REDUNDANT*

Plaintiff has sued deputies Price and Lafollette in both their individual and official capacities. Inasmuch as plaintiff also sued the governmental entity who employed these deputies - Hawkins County, - their suit against the deputies in their official capacities is a redundancy. Therefore, defendants' motion that this suit against deputies Price and Lafollette in their *official* capacities be dismissed is well-taken and will be granted. See, *Brandon v. Holt*, 469 U.S. 464, 471 (1985).

*II. WHETHER PLAINTIFF'S CLAIMS FOR FALSE ARREST FAIL AS A MATTER OF LAW SINCE THE ARREST WAS SUPPORTED BY PROBABLE CAUSE*

As an initial matter, plaintiff asserts claims for both false arrest and false imprisonment. Unfortunately, these terms frequently are used interchangeably by many lawyers (and judges), and

it often is unclear whether the pleader is making two different claims or merely referring to the same claim by different terminology. The Tennessee Legislature obviously considers false imprisonment and false arrest to be separate and independent causes of action, at least for purposes of the Tennessee Governmental Tort Liability Act. *See*, Tenn.Code Ann. § 29-20-205(2), and *Elmore v. Cruz*, 2003 WL 239169, Tenn. App. (2003). As far as constitutional claims under 42 U.S.C. § 1983 are concerned, false arrest and false imprisonment may, or may not be, the same thing, depending upon the circumstances:

> "A false arrest is one means of committing a false imprisonment, but a distinction has been drawn between the two in that a false arrest must be committed under assumption of legal authority," 35 C.J.S. *False Imprisonment* § 2 (1960). Here the nature of the claims of false arrest and false imprisonment by police offers acting while on duty are essentially the same since the alleged false imprisonment arises out of and logically follows the arrest of plaintiffs. [citations omitted].

*Walker, et al., v. Schaeffer, et al.*, 854 F.2d 138, 142 (6th Cir. 1988).

Here, plaintiff's alleged false imprisonment was the natural result of the claimed false arrest, and there is no real difference between the two. Accordingly, plaintiff's claims for false imprisonment will be analyzed as a claim for false arrest, which in reality it is.

It is elementary Fourth Amendment law that an officer must have probable cause before arresting a person; it follows that an arrest without probable cause is violative of the Constitution and will support a suit under 42 U.S.C. § 1983:

> A plaintiff's claim brought under § 1983 requires proof that: (1) the defendant was a person acting under the color of state law, and (2) the defendant deprived the plaintiff of rights, privileges or immunity secured by the Constitution or laws of the United States.
>
> In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause. A police officer has probable

cause if there is a "fair probability" that the individual to be arrested has either committed or intends to commit a crime. A police officer determines the existence of probable cause by examining the facts and circumstances within his knowledge that are sufficient to inform "a prudent person, or one of reasonable caution," that the suspect "has committed, is committing, or is about to commit an offense." "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." [all internal citations omitted].

*Fridley v. Horrighs*, 291 F.3d 867, 871-72 (6th Cir. 2002).

Deputy Price had a report of an intoxicated male on the roadway, and nothing more. Defendants argue that inasmuch as plaintiff was (1) a male and (2) walking along the edge of the roadway, there was probable cause to arrest him. Respectfully, the court disagrees. To be sure, plaintiff's presence at the edge of the road justified a temporary investigative detention in the sense of *Terry v. Ohio*, 392 U.S. 1 (1968), but it certainly did not constitute probable cause to arrest him.

If deputy Price's version of the incident is believed, then there was probable cause to arrest plaintiff. According to deputy Price, he repeatedly attempted to talk to plaintiff in an effort to investigate the matter and determine if plaintiff was or was not the subject of the report. Rather than comply with Price's reasonable requests to stop and talk, plaintiff continuously refused and that persistent refusal would cause a reasonable police officer to believe that, more likely than not, plaintiff was intoxicated and had been in the roadway stopping traffic. Therefore, if the jury should believe deputy Price's version, there was probable cause to arrest the plaintiff.

But if plaintiff's version of the incident is believed, there was no probable cause to arrest him. He was cooperative at all times and told deputy Price on more than one occasion that it was not he who had been drunk and in the roadway, but rather it was his son, and that he (plaintiff) had done nothing wrong. Notwithstanding these protestations and attempted explanations, Price

10

proceeded to attempt to handcuff and arrest him.

For purposes of ruling on defendants' motion for summary judgment, plaintiff's version must be taken as true. Based on plaintiff's version, there was no probable cause for his arrest.

### *III. WHETHER PLAINTIFF'S CLAIMS FOR OUTRAGEOUS CONDUCT FAIL AS A MATTER OF LAW BECAUSE THE DEFENDANTS' ACTIONS DID NOT RISE TO THE REQUISITE LEVEL OF OUTRAGEOUSNESS AND PLAINTIFF DID NOT SUSTAIN A SERIOUS MENTAL INJURY*

As discussed earlier, this court has been unable to find any claim in the complaint seeking a recovery based upon the tort of outrageous conduct. Nevertheless, since defendants believe there is such a claim, the court will address the matter.

The plaintiff must prove three elements to establish a viable claim for outrageous conduct: (1) the conduct must have been intentional or reckless; (2) it must be so outrageous that it is not tolerated by civilized society; and (3) it must result in serious mental injury. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Outrageous conduct and "intentional infliction of emotional distress" are different names for the same tort. *Id.,* 936 S.W.2d at 622, fn. 3.

Plaintiff alleges that he was embarrassed and humiliated, but neither of those emotions are enough to sustain a claim for outrageous conduct. *See, Barbee v. Wal-Mart Stores, Inc*., 2004 WL 239763 at *3.

If plaintiff is asserting a claim based on the tort of outrageous conduct, that claim should be dismissed.

### *IV. WHETHER SHERIFF WARREN D. RIMER, DEPUTY MICHAEL PRICE, AND DEPUTY DAVID LAFOLLETTE ARE QUALIFIEDLY [sic] IMMUNE FROM SUIT SINCE THEIR ACTIONS WERE OBJECTIVELY REASONABLE AND DID NOT VIOLATE PLAINTIFF'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS*

> A qualified immunity analysis consists of two questions: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right; and (2) if the violation could be made out on a favorable view of the parties' submissions, was the right clearly established? *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

*Wilson v. Morgan*, 2002 WL 31863828, at **2 (6th Cir. 2002).

As already discussed, Price had no probable cause to arrest plaintiff under plaintiff's version of the facts. Thus, the inquiry moves one step further: was the constitutional right clearly established? To be sure, there could be factual scenarios in which reasonable minds could differ regarding the existence, or lack, of probable cause. This, however, is not such a scenario. Again, if plaintiff's version of the facts is assumed to be true, deputy Price arrested plaintiff merely because plaintiff was a male and walking along side of the road in the general area where a drunk in the middle of the road had earlier been reported. To quote from *Wilson, supra*, "No reasonable officer with knowledge of these facts would believe that the arrest was supported by probable cause."[2] Deputy Price, therefore, is not entitled to qualified immunity.

Deputy Lafollette, however, is entitled to qualified immunity. Deputy Lafollette became involved only when he observed plaintiff's resistence to deputy Price's attempted arrest. All that Lafollette did was assist a fellow officer in an effort to subdue an individual who was obviously resisting arrest. As far as can be ascertained from this record, Lafollette did not know what precipitated Price's efforts to arrest plaintiff; all he knew was that an officer was attempting to arrest a person, and that person was resisting. The law does not require an officer to inquire if an arrest being made by a fellow officer is supported by probable cause before lending assistance.

---

[2] 2000 WL 31863828, at *3.

Plaintiff's claim for false arrest against deputy Lafollette should be dismissed.

## V. WHETHER PLAINTIFF'S CLAIMS AGAINST HAWKINS COUNTY UNDER 42 U.S.C. § 1983 FAIL AS A MATTER OF LAW SINCE RESPONDEAT SUPERIOR IS NOT A PROPER BASIS FOR LIABILITY UNDER § 1983

*Respondeat superior* has no application to suits brought under 42 U.S.C. § 1983. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978). Accordingly, neither Sheriff Rimer nor Hawkins County, Tennessee has any vicarious liability for deputy Price's false arrest of plaintiff.

## VI. WHETHER UNDER TENN. CODE ANN. § 8-8-301, SHERIFF WARREN RIMER IS IMMUNE FROM LIABILITY FOR THE ACTS OR OMISSIONS OF HIS DEPUTIES

As noted immediately above, *respondeat superior* has no application to suits filed under 42 U.S.C. § 1983. To the extent plaintiff seeks to impose vicarious liability upon Sheriff Rimer under any state law claim that plaintiff might be asserting, the Sheriff is immune under Tenn.Code Ann. § 8-8-301:

> No sheriff . . . shall be liable for any wrongs, injuries, losses, damages or expenses incurred as a result of any fact or failure to act on the part of any deputy appointed by the sheriff, whether the deputy is acting by virtue of office, under color of office or otherwise.

Therefore, if the plaintiff is asserting any state law claims against the deputies, and if the plaintiff seeks to impose vicarious liability on the sheriff with respect to any of those state law claims, the motion for summary judgment should be granted.

## VII. WHETHER PLAINTIFF'S CLAIMS FOR IMPROPER OR INSUFFICIENT TRAINING IN THE HAWKINS COUNTY SHERIFF'S DEPARTMENT FAIL AS A MATTER OF LAW

All parties have relied upon the discovery depositions of the plaintiff and deputy Price as far as defendants' motion for summary judgment is concerned. Deputy Price testified during his

discovery deposition that he is certified by the state of Tennessee as a law enforcement officer, and that he has done everything necessary to maintain that certification.[3] Apart from the bare allegations in his complaint, plaintiff has come for-ward with no evidence to suggest that Hawkins County failed to adequately train or supervise its law enforcement officers. Under Rule 56(c), plaintiff is required to demon-strate that there is a genuine issue regarding his allegations of inadequate training. Since he has failed to do so, the motion for summary judgment will be granted with respect to this claim.

***VIII. WHETHER PLAINTIFF'S STATE LAW CLAIMS OF ASSAULT AND BATTERY FAIL AS A MATTER OF LAW BECAUSE DEFENDANTS' ACTIONS WERE OBJECTIVELY REASONABLE AND ANY ASSAULT AND BATTERY WAS A RESULT OF THE OFFICERS' ATTEMPTS TO SUBDUE PLAINTIFF IN ORDER TO EFFECT AN ARREST***

"Assault and battery" is another of those legal terms that often has been thrown about too casually, as a result of which the meaning has become blurred. Actually, assault and battery describes two separate and distinct acts or crimes. *State v. Deal*, 1988 WL 10075 Tenn.Crim. App. (1988). Technically, an assault involves no touching or contact, but rather is the threat (or intent) to injure another person with the accompanying ability to carry out that threat. A battery is the actual touch or contact, if done without permission. A battery necessarily includes an assault, but an assault does not necessarily include a battery. *See, e.g., Rambo v. State of Tennessee*, 472 S.W.2d 911, Tenn. Crim.App. (1971).

It is undisputed that deputy Price made physical contact with the plaintiff; after all, deputy Price necessarily touched the plaintiff numerous times in an effort to arrest him.

---

[3]Price Depo., p. 84.

14

More significantly, Price sprayed plaintiff directly in the face with pepper spray. However, a law enforcement officer does not commit the tort of battery if he attempts to make a lawful arrest, so long as he does not use excessive force. But what if the arrest is not lawful, i.e., not supported by probable cause? Does the officer's touching then constitute a battery?

In some states within the Sixth Circuit, e.g., Michigan, a citizen may properly resist an unlawful arrest. *Von Herbert v. City of St. Clair Shores*, 2003 WL 1194304 (6th Cir. 2003). In Tennessee, however, a citizen has no right to resist an arrest, whether lawful or unlawful. *See*, Tenn. Code Ann. § 39-16-602. Therefore, Price's physical contact with plaintiff, and then of course, Lafollette's contact with plaintiff, was the result of plaintiff's admitted resistence to Price's efforts to arrest him. Plaintiff's claim for assault and battery will be dismissed.

Nor has plaintiff demonstrated that there is a genuine issue of fact regarding his claims of excessive force. He was resisting arrest, and the fact that the arrest was unlawful does not give him the right to resist under Tennessee law. Price's use of pepper spray was a measured and appropriate response to plaintiff's resistence. By the same token, pushing plaintiff to the ground to handcuff him also was a reasonable response to his resistence.

Plaintiff's claim for excessive force and for assault and battery will be dismissed.

## IX. *NEGLIGENCE*

Plaintiff also has thrown into the mix of his complaint an allegation of negligence:

12. Stubblefield's injuries were proximately caused by the negligent acts
or omissions of the Defendants individually and collectively in that their

15

> actions were not objectively reasonable.
> 20. . . . It is alleged that Defendants did in fact negligently breech [sic] their duty owed to Stubblefield to reasonably provide for his safety and not to direct violence against him.

First, ordinary negligence will not support a constitutional claim under 42 U.S.C. § 1983. *Jones v. Sherrill*, 825 F.2d 1102, 1106 (6th Cir. 1987). Only *gross* negligence will support a § 1983 claim, *id.,* and plaintiff has not made such an allegation. Thus, plaintiff has no viable § 1983 claim based on negligence.

On the assumption that plaintiff is alleging a pendent state law claim based on negligence, it must be dismissed inasmuch as the deputies, the Sheriff, and Hawkins County are immune from suit under the Tennessee Governmental Tort Liability Act, Tenn.Code Ann. § 29-20-101, *et seq., Willis v. Barksdale*, 625 F.Supp. 411, W.D. Tenn. (1985).

### *CONCLUSION*

Deputy Price's motion for summary judgment with respect to plaintiff's claim under 42 U.S.C. § 1983 for false arrest is denied. Deputy Price's motion for summary judgment with respect to all other causes of action asserted against him by plaintiff will be granted. The summary judgment motion by all other defendants will be granted.

Thus, plaintiff's claim against deputy Price in his individual capacity, and his "official capacity" claim against Hawkins County, for false arrest will proceed to trial. All other claims against Price and Hawkins County will be dismissed.

Plaintiff's suit against Lafollette will be dismissed in its entirety.

An appropriate order will be entered this day.

SO ORDERED:

    s/ Dennis H. Inman
United States Magistrate Judge